# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF NORTH CAROLINA
# WESTERN DIVISION

| | |
|---|---|
| EVAN WHITAKER, on behalf of himself and all others similarly situated,<br><br>    Plaintiff,<br><br>  v.<br><br>GOODMAN GLOBAL, INC., GOODMAN MANUFACTURING COMPANY, L.P., and GOODMAN COMPANY, L.P.,<br><br>    Defendants. | Civil Action No. 5:14-cv-00302 |

## DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

## I. NATURE OF THE CASE

Plaintiff Evan Whitaker bought a home equipped with a Goodman heating and air conditioning unit, which he used without incident for nearly two years. When Mr. Whitaker's unit allegedly experienced a leak in the evaporator coil, Goodman Manufacturing provided a replacement coil free of charge pursuant to the limited, express warranty covering the unit. Mr. Whitaker does not allege that his unit experienced any other problems after that.

Mr. Whitaker would turn his one-time request for a replacement part, coupled with Goodman Manufacturing's undisputed compliance with its warranty obligation, into a massive class action. He asserts four claims against Defendants predicated on these facts: (1) breach of express warranty; (2) breach of the implied warranty of merchantability; (3) violation of the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA"); and (4) unjust enrichment. But the complaint provides virtually no factual support for any of these claims. The complaint should be dismissed in its entirety under Rule 12(b)(6).

*Breach of express warranty*: Mr. Whitaker's breach-of-express-warranty claim fails because he concedes that Goodman Manufacturing complied with its warranty obligations. To circumvent the warranty's lawful limitation of remedies, he argues that the limited remedy fails of its essential purpose and that its limits are unconscionable. Mr. Whitaker's own allegations, however, demonstrate precisely the opposite. The limited warranty satisfied its essential purpose, and the limitations contained in it are entirely consistent with North Carolina law. Mr. Whitaker's breach-of-express-warranty claim is thus devoid of support, even when the well-pleaded facts are taken as true.

*Breach of implied warranty*: Mr. Whitaker's breach-of-implied-warranty claim fails for two reasons. First, he is not in contractual privity with Defendants. This fact alone is fatal to his implied-warranty claim. Second, his own allegations demonstrate that his Goodman unit worked without issue for approximately two years. Thus, as a matter of law, the unit was not unmerchantable when it was sold, which is yet another reason to dismiss his implied-warranty claim.

*North Carolina Unfair and Deceptive Trade Practices Act*: The law in North Carolina is clear that a claim under the UDTPA cannot be predicated on a mere breach of contract, which is all that Mr. Whitaker alleges. To the extent that he premises his UDTPA claim on misrepresentations, it likewise fails because he pleads no facts demonstrating his actual reliance on any such misrepresentations. This claim also fails as a matter of law for the independent reason that it is barred by the economic loss rule.

*Unjust Enrichment*: Mr. Whitaker's unjust-enrichment claim is barred because, as he acknowledges, his relationship with Defendants is governed by a contract (the limited warranty), making this claim superfluous. Even if that were not the case, his claim would nevertheless fail

because he alleges no facts showing that Defendants were *unjustly* enriched, as the law requires to state a claim for *unjust* enrichment.

## II. ALLEGATIONS IN THE COMPLAINT

In September 2011, Mr. Whitaker "purchased a new home which had been built equipped with a Goodman Unit." (Compl. ¶ 69.) The unit came with an express warranty running from Goodman Manufacturing to the end-user. (*Id.* ¶ 57.) Under this "Limited Warranty," Goodman Manufacturing warranted all parts for a period of five years. (Limited Warranty, attached as Exhibit A; *see also* Compl. ¶ 58.)[1] The warranty period extends to ten years if, among other things, the unit is properly registered within 60 days of installation. (Ex. A; Compl. ¶ 58.) Mr. Whitaker does not allege that he registered his unit.

The limited warranty provides: "As its only responsibility, and your only remedy, Goodman [Manufacturing] will furnish a replacement part, without charge for the part only, to replace any part that is found to be defective due to workmanship or materials under normal use and maintenance." (Ex. A; Compl. ¶ 59.) It does not cover "labor, freight, or any other cost associated with the service, repair or operation of the unit." (Ex. A; Compl. ¶ 60.) It also disclaims "all other express warranties" and excludes liability for incidental and consequential damages. (Ex. A; Compl. ¶ 61.)

Mr. Whitaker does not allege that he experienced any problems with his unit for nearly two years after purchasing his home. (Compl. ¶¶ 69-70.) He alleges that, in July 2013, he "experienced problems with his Goodman Unit" when it "failed to cool his home." (*Id.* ¶ 70.)

---

[1] Although Mr. Whitaker repeatedly references the warranty in his complaint (*e.g.*, Compl. ¶¶ 57-61, 91-92), he did not attach a copy of it to his pleading. Nonetheless, Mr. Whitaker purports to describe the terms of the warranty and his breach-of-express-warranty claim is based upon it. This Court, thus, may properly consider it at the motion-to-dismiss stage. *See Stewart v. Pension Trust of Bethlehem Steel Corp.*, 12 F. App'x 174, 176 (4th Cir. 2001) ("[T]he district court did not err in considering copies of the Pension Agreement and CBAs offered by Appellees because Appellants explicitly relied on these documents in their complaint.").

According to the complaint, a "technician determined that the evaporator coil in Whitaker's Goodman Unit was leaking and needed to be replaced." (*Id.*)  Mr. Whitaker concedes that his technician obtained a "new evaporator coil" pursuant to the warranty covering his unit and that "Goodman provided the [replacement] evaporator coil free of charge." (*Id.* ¶ 71.)  He alleges, however, that he paid "over $650" for "labor and refrigerant costs" that were not covered by the warranty. (*Id.*)  Following this single repair, Mr. Whitaker does not allege that he experienced any further problems with his Goodman unit.  (*See id.* ¶¶ 69-71.)  He also does not allege that he interacted or communicated with any Defendant at any time for any reason.

Mr. Whitaker seeks to represent a putative class consisting of "[a]ll persons residing in the State of North Carolina who purchased a Goodman Unit since January 2007 for primarily personal, family or household purposes, and not for resale." (*Id.* ¶ 76.)  He alleges that these products contain "defective" evaporator coils that "improperly and prematurely leak refrigerant." (*Id.* ¶¶ 2, 23.)  The proposed class is not limited to consumers who allegedly had a problem with the evaporator coils in their units.  It purportedly includes all purchasers, regardless of whether they actually experienced any problem.  (*Id.* ¶¶ 21-23.)

### III.  STANDARD OF REVIEW

A cause of action must be dismissed under Rule 12(b)(6) "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007).  The allegations must raise the right to relief beyond "possibility" and "above the speculative level." *Id.* at 555, 557.  In assessing the "plausibility" of plaintiff's claims, legal conclusions and conclusory factual allegations are not entitled to an assumption of truth.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 681 (2009) (the pleading standard "demands more than an unadorned, the defendant unlawfully-harmed-me accusation").  A pleading offering only "labels and conclusions" or "a formulaic recitation of the elements of a

cause of action will not do." *Twombly*, 550 U.S. at 555. Rather, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

Mr. Whitaker, the only named plaintiff, fails to satisfy these standards and, thus, the complaint should be dismissed in its entirety. *See O'Shea v. Littleton*, 414 U.S. 488, 494 (1974) ("if none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class"); *see also Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 n.20 (1976) (quoting *Warth v. Seldin*, 422 U.S. 490, 502 (1975) (that a suit may be a class action "adds nothing to the question of standing, for even named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class . . . which they purport to represent'")).

## IV. ARGUMENT

### A. Plaintiff Has Failed To State A Viable Claim For Breach Of Express Warranty.

The central question raised by the complaint is whether a manufacturer can provide a parts-only warranty. "A manufacturer's liability for breach of an express warranty derives from, and is measured by, the terms of that warranty." *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 525 (1992). The limited warranty at issue plainly provides: "As its only responsibility, and your only remedy, Goodman will furnish a replacement part, without charge for the part only, to replace any part that is found to be defective due to workmanship or materials under normal use and maintenance." (Ex. A; Compl. ¶ 59.) Goodman Manufacturing fully complied with this warranty obligation, and Mr. Whitaker concedes it.

When his Goodman unit allegedly experienced a problem with a leaky evaporator coil in July 2013 – after nearly two years of use – Mr. Whitaker admits that Goodman Manufacturing "provided the [replacement] evaporator coil free of charge." (Compl. ¶ 71.) He does not allege

that he experienced any further problems with his unit after that. His own allegations thus demonstrate that Goodman Manufacturing fully complied with its warranty obligations.[2]

Although he alleges that he incurred "labor and refrigerant costs" as part of the repair (*id.* ¶ 71), Mr. Whitaker does not dispute that the limited warranty expressly bars recovery for such costs. (*Id.* ¶ 60 (providing that warranty does not cover "labor, freight, or any other cost associated with the service, repair or operation of the unit"); *id.* ¶ 61 (providing that "GOODMAN SHALL IN NO EVENT BE LIABLE FOR INCIDENTAL OR CONSEQUENTIAL DAMAGES").)

Mr. Whitaker's attempt to predicate his breach-of-express-warranty claim on purported representations made on Goodman Manufacturing's website also must fail. (*Id.* ¶¶ 65-67, 91). The limited warranty explicitly provides that it is offered "in lieu of all other express warranties," including any that might have been displayed on websites. (Ex. A.) Even absent such a disclaimer, any attempt by Mr. Whitaker to base his express-warranty claim on website statements would be a non-starter. To establish a breach of express warranty under North Carolina law, the statement must have been "relied upon by the plaintiff in making his decision to purchase." *Prichard Enters., Inc. v. Adkins*, 858 F. Supp. 2d 576, 584 (E.D.N.C. 2012). Mr. Whitaker does not allege that he ever saw the statements on the website, much less that he relied on them before he purchased his unit. Indeed, given that he purchased a house in which the unit

---

[2] As the complaint alleges, Goodman Manufacturing issued the warranty covering Mr. Whitaker's unit (Compl. ¶¶ 57, 69), not Goodman Global or Goodman Company – two completely separate legal entities that owed no warranty obligations to Mr. Whitaker. He cannot maintain a breach of express warranty claim against companies that did not actually issue any warranties covering his unit.

- 6 -

already had been installed by the builder, he cannot plausibly claim to have relied upon the website in making his purchase decision.[3]

Unable to demonstrate that Goodman breached the express terms of its warranty, Mr. Whitaker resorts to arguing that the remedies provided for in the warranty are "unconscionable and/or fail their essential purpose." (Compl. ¶¶ 102, 113.) But the well-pleaded allegations of the complaint support neither contention.

### 1. The limited warranty did not fail of its essential purpose.

North Carolina law permits a manufacturer to issue a warranty that "limit[s] or alter[s] the measure of damages," such as by limiting recovery to "replacement of nonconforming goods or parts." N.C. Gen. Stat. § 25-2-719(1)(a); *see also id.* § 25-2-719(3) (permitting the exclusion of consequential damages); *Kelly v. Georgia-Pacific LLC*, 671 F. Supp. 2d 785, 798 (E.D.N.C. 2009) (upholding limited warranty providing for "either repair or replacement" of the affected part).[4] Such a warranty is not breached and does not fail if the alleged defect is cured by a replacement part. *Farrar & Farrar Farms v. Miller-St. Nazianz, Inc.*, 477 F. App'x 981, 988 (4th Cir. 2012) (holding that because a replacement part was provided "just as [the] warranty contemplated," there was no failure of essential purpose, even though plaintiff incurred "labor costs" and other "consequential damages" not covered by the warranty). And, when Mr. Whitaker's unit allegedly experienced a problem with a leaky evaporator coil, he concedes that

---

[3] Moreover, the statements identified by Mr. Whitaker (Compl. ¶¶ 65-67) are nothing more than commercial puffery, which cannot form the basis of an express-warranty claim. *See* N.C. Gen. Stat. § 25-2-313(2) ("an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty").

[4] Warranty limitations such as the one in this case, which cover parts but not labor, are not uncommon. Even the Federal Trade Commission acknowledges their utility. *E.g.*, 16 C.F.R. § 700.10 ("Under a limited warranty that provides only for replacement of defective parts and no portion of labor charges, section 102(c) [of the federal Magnuson-Moss Warranty Act] prohibits a condition that the consumer use only service labor identified by the warrantor to install the replacement parts.").

Goodman Manufacturing "provided the [replacement] evaporator coil free of charge," just as the warranty required. (Compl. ¶ 71.) He thus cannot show that the limited warranty failed of its essential purpose.[5]

### 2. The limitations in the warranty are not unconscionable.

In North Carolina, the "basic test [of unconscionability] is whether, in the light of the general commercial background and the commercial needs of the particular trade or case, the clauses involved are so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract . . . The principle is one of the prevention of oppression and unfair surprise . . . and not of disturbance of allocation of risks because of superior bargaining power." N.C. Gen. Stat. § 25-2-302(1) cmt. 1. To set aside the terms of a warranty, a plaintiff must establish that they are "both substantively *and* procedurally unconscionable." *Weaver v. St. Joseph of the Pines, Inc.*, 187 N.C. App. 198, 212-13, 652 S.E.2d 701, 712 (2007) (emphasis added) (internal quotation marks omitted) (affirming finding that contract was not unconscionable); *Rite Color Chem. Co., Inc. v. Velvet Textile Co., Inc.*, 105 N.C. App. 14, 20, 411 S.E.2d 645, 648-49 (1992) (same).

"Procedural unconscionability involves bargaining naughtiness in the formation of the contract, such as fraud, coercion, undue influence, misrepresentation, or inadequate disclosure," while "[s]ubstantive unconscionability involves an inequality of the bargain," *Weaver*, 187 N.C.

---

[5] Mr. Whitaker mischaracterizes the terms of the limited warranty when he alleges that his unit was warranted to be "free from defects," suggesting that the mere presence of a defective component is sufficient to establish a breach. (Compl. ¶¶ 91, 93.) There is no breach if the warrantor complies with the terms of the warranty by replacing any defective part, which is precisely what Mr. Whitaker alleges happened here. As one court aptly explained, "[i]f plaintiffs were correct that the provision of nonconforming goods in the first instance causes a warranty to fail of its essential purpose, then every warranty would fail of its essential purpose as soon as the buyer invoked it. After all, the whole reason why a warranty comes into play in a commercial transaction is because the original goods malfunctioned (*i.e.*, they were 'nonconforming' in some way). If the seller can and does repair or replace those nonconforming goods within a reasonable time, then the warranty does not fail of its essential purpose, but instead fulfills that essential purpose." *McCollough Enters., LLC v. Marvin Windows & Doors*, No. 09-0573, 2010 U.S. Dist. LEXIS 128102, at *42 n.26 (S.D. Ala. Dec. 2, 2010) (unpublished, attached as Exhibit B).

App. at 212-13, 652 S.E.2d at 712 (internal quotation marks and edits omitted), which must be "so manifest as to shock the judgment of a person of common sense," and the terms "so oppressive that no reasonable person would make them on the one hand, and no honest and fair person would accept them on the other." *Brenner v. Little Red School House, Ltd.*, 302 N.C. 207, 213, 274 S.E.2d 206, 210 (1981). The allegations in the complaint are insufficient to establish either substantive or procedural unconscionability, much less both.

Mr. Whitaker cannot show procedural unconscionability because the warranty is a one-page document in readable font explicitly labeled "Limited Warranty." (Ex. A.) It describes the consumer's remedies in plain language, conspicuously disclaiming the types of damages at issue in this case. (*Id.*) And Mr. Whitaker has not alleged any "bargaining naughtiness in the formation of the contract," *Weaver*, 187 N.C. App. at 212, 652 S.E.2d at 712 (internal quotation marks omitted), nor could he given that he did not even purchase his Goodman unit.

Nor can he show substantive unconscionability because the limitations in the warranty are not "shock[ing]" or "so oppressive that no reasonable person would make them on the one hand, and no honest and fair person would accept them on the other." *Brenner*, 302 N.C. at 213, 274 S.E.2d at 210. Indeed, they are explicitly permitted under North Carolina law. N.C. Gen. Stat. § 25-2-719(1)(a) & (3); *Kelly*, 671 F. Supp. 2d at 798.

Equally unavailing is the allegation that the limitation of remedies in the warranty is unconscionable because Defendants supposedly "knew" of alleged defects in their products. (*E.g.,* Compl. ¶ 62.) The allegation rests largely on complaints posted "on various online message boards" that have no connection to Defendants. (*Id.* ¶¶ 49-50; *id.* Exs. C & D.) Mr. Whitaker does not allege how such comments would have reached Defendants – much less that they reached *only* Defendants and not consumers as well. Moreover, many of the messages were

- 9 -

posted *after* Mr. Whitaker acquired his Goodman unit in September 2011 and, thus, could not possibly have been known to Defendants at the time the unit was sold. *See* N.C. Gen. Stat. § 25-2-302(1) (requiring showing that warranty was "unconscionable *at the time it was made*") (emphasis added). The same is true for the actions that Defendants allegedly took later to address the purported defect, which also do not plausibly establish knowledge on the part of Defendants at the time Mr. Whitaker's unit was sold. (Compl. ¶ 42 & Ex. A (dealer reimbursement form dated October 17, 2011); *id.* ¶ 48 (press release dated February 2, 2012).)

In any event, a defendant's "combined knowledge about the product and its limitation of liability language in the express warranty does not render the *language* of the express warranty 'unconscionable.'" *Harbison v. Louisiana-Pacific Corp.*, No. 13-cv-0814, 2014 U.S. Dist. LEXIS 26116, at *11 (W.D. Pa. Feb. 27, 2014) (unpublished, attached as Exhibit C) (rejecting attempt by counsel for Mr. Whitaker to "back door" damages foreclosed by limited, express warranty; holding that plaintiff could not assert "a breach of express warranty claim, only to demand that the potential remedy set forth in that express warranty be deemed unconscionable, so that he may seek damages in excess of the warranty's 'limitation'"). And that is all Mr. Whitaker alleges here. His unconscionability argument should be rejected.

**B.     Plaintiff Has Failed To State A Viable Claim For Breach Of Implied Warranty.**

Mr. Whitaker's claim for breach of the implied warranty of merchantability also fails as a matter of law. In North Carolina, "privity is required to assert a claim for breach of an implied warranty involving only economic loss." *Gregory v. Atrium Door & Window Co.*, 106 N.C. App. 142, 144, 415 S.E.2d 574, 576 (1992); *Kelly*, 671 F. Supp. 2d at 795-97 (finding that the "sale of a product with a limited warranty that covers the down-the-stream owner of the product" does not establish privity for purposes of an implied warranty claim). Here, the only issue is economic losses, and Mr. Whitaker does not allege that he was in privity with Defendants.

(Compl. ¶ 71; *see id.* ¶¶ 103-113.) He did not purchase his Goodman unit from any Defendant. Rather, he bought a newly constructed home that already came equipped with the unit that had been purchased by his builder. (*Id.* ¶ 69.) The absence of privity between Mr. Whitaker and Defendants is fatal to his breach-of-implied-warranty claim.

Beyond that, Mr. Whitaker has not alleged facts showing that his unit was defective at the time of sale, as required by law. *Manley v. Doe*, 849 F. Supp. 2d 594, 600 (E.D.N.C. 2012) (explaining that claim for breach of implied warranty of merchantability requires that "the goods were defective at the time of sale"). He alleges no facts explaining how his unit was defective at the time of sale. In fact, he admits that the first (and only) alleged problem with his unit came nearly two years after he acquired it. (Compl. ¶¶ 69-70.)

His breach-of-implied-warranty claim should be dismissed.

**C.     Plaintiff Has Failed To State A Viable Claim Under The UDTPA.**

The UDTPA prohibits "unfair or deceptive acts or practices in or affecting commerce." N.C. Gen. Stat. § 75-1.1(a). Courts have cautioned that "substantial aggravating circumstances" must exist to "unlock[] the extraordinary treble damages provision of the UDTPA." *Rohlik v. I-Flow Corp.*, No. 7:10-CV-173, 2011 U.S. Dist. LEXIS 73454, at *12 (E.D.N.C. July 7, 2011) (unpublished, attached as <u>Exhibit D</u>) (granting motion to dismiss UDTPA claim). Indeed, the Fourth Circuit has characterized "'North Carolina's UDTPA as a boilerplate claim in almost every complaint based on a commercial or consumer transaction in North Carolina,' frequently asserted in an effort to obtain the extraordinary damages authorized by the act." *Id.* at *12 n.5 (quoting *Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 347 (4th Cir. 1998)). As a result, the "Fourth Circuit has warned against allowing plaintiffs to . . . 'manufacture a tort dispute' out of such claims." *Id.* (quoting *Strum v. Exxon Co.*, 15 F.3d 327, 329 (4th Cir.1994)). That is precisely what Mr. Whitaker is attempting to do in this case.

- 11 -

To state a claim under the UDTPA, "a plaintiff must show (1) defendant committed an unfair or deceptive act or practice; (2) the action in question was in or affecting commerce; and (3) the act proximately caused injury to the plaintiff." *Ellis v. Louisiana-Pacific Corp.*, 699 F.3d 778, 787 (4th Cir. 2012) (internal quotation marks omitted) (affirming dismissal of UDTPA claim in putative class action). As this Court has explained, "[m]erely asserting a fraud or UDTPA claim cannot transform [a] breach of warranty case into a fraud or UDTPA case." *Prichard*, 858 F. Supp. 2d at 591. Rather, "egregious" or "substantial aggravating circumstances" must exist, and a breach of warranty, even if intentional, is insufficient to give rise to a UDTPA claim. *Ellis*, 699 F.3d at 787.

Measured by these standards, Mr. Whitaker's UDTPA allegations fall well short of the mark. He fails to allege any facts suggesting egregious conduct or the existence of substantial aggravating circumstances. Indeed, his UDTPA claim is predicated on essentially the same allegations purporting to support his express-warranty claim. (*Compare* Compl. ¶¶ 93-94, 102, *with* ¶¶ 116-121.) An allegation that a manufacturer "knew" its product "would not live up to the terms of the warranty and should have disclosed this fact to consumers . . . is simply another way of claiming that [the manufacturer] breached its express warranty"; that is not enough to state a viable UDTPA claim. *Ellis*, 699 F.3d at 787; *Yancey v. Remington Arms Co., LLC*, No. 1:12-cv-477, 2013 U.S. Dist. LEXIS 140397, at *29-30 (M.D.N.C. Sept. 30, 2013) (unpublished, attached as <u>Exhibit E</u>) (recommending that breach of express warranty claim, and UDTPA claim based on same allegations, be dismissed).

Although Mr. Whitaker alleges that "Plaintiff and members of the class relied on Goodman's false or deceptive representations" (Compl. ¶ 122), this allegation is wholly conclusory and must be disregarded. And Mr. Whitaker pleads no facts even suggesting actual

- 12 -

reliance on his part. Under North Carolina law, when "'an unfair or deceptive practice claim is based upon an alleged misrepresentation by the defendant, the plaintiff must show actual reliance on the alleged misrepresentation in order to establish that the alleged misrepresentation proximately caused the injury of which plaintiff complains.'" *Yancey*, 2013 U.S. Dist. LEXIS 140397, at *33-34 (quoting *Sunset Beach Dev., LLC v. AMEC, Inc.*, 196 N.C. App. 202, 211, 675 S.E.2d 46, 53 (2009) (internal quotation marks and citation omitted)). The concept of "actual reliance requires that the plaintiff have affirmatively incorporated the alleged misrepresentation into his or her decision-making process." *Bumpers v. Cmty. Bank of N. Va.*, 367 N.C. 81, 90, 747 S.E.2d 220, 226 (2013); *see also Wilson v. Dryvit Sys. Inc.*, 206 F. Supp. 2d 749, 756 (E.D.N.C. 2002) (dismissing UDTPA claim because there was no evidence that manufacturer did or said anything that influenced plaintiff's purchase decision).

Mr. Whitaker purports to list a number of statements that Goodman Manufacturing allegedly "falsely represented" on its website, claiming that "these representations were intended to induce, and did induce, plaintiff and members of the class to purchase Goodman Units." (Compl. ¶¶ 65, 67.) But he purchased a home; it was the home builder that purchased the Goodman unit. (*Id.* ¶ 69.) He does not allege that he ever saw the statements on the website, much less that he relied on them before he purchased his unit. He does not even allege that he visited the website.

Finally, the allegations purporting to support Mr. Whitaker's UDTPA claim are intertwined with his allegations of a product defect. Indeed, the only information he alleges to have been concealed relates to the supposed product defect. Coupled with the fact that he seeks recovery only for alleged economic losses, it is plain that the economic loss rule bars the UDTPA claim as a matter of law. *Butcher v. DaimlerChrysler Co., LLC*, No. 1:08-cv-207, 2008

- 13 -

U.S. Dist. LEXIS 57679, at *13-14 (M.D.N.C. Jul. 29, 2008) (unpublished, attached as Exhibit F) (citing *Bussian v. DaimlerChrysler Corp.*, 411 F. Supp. 2d 614, 625–26 (M.D.N.C. 2006)) (holding that under the economic loss rule, "the purchaser of an allegedly defective product is prohibited from using tort law, including the UDTPA, to recover purely economic losses"); *Coker v. DaimlerChrysler Corp.*, 2004 NCBC 1, ¶ 13 n.3 (N.C. Super. Ct. 2004) (reasoning that UDTPA claim was "based upon the same theories of liability and damages as the common law fraud claim" and to permit recovery for such a claim would "eviscerate the contract/warranty system and the economic loss rule"), *aff'd on other grounds*, 172 N.C. App. 386, 617 S.E.2d 306 (2005).

For all of the above reasons, the UDTPA claim should be dismissed.

**D.     Plaintiff Has Failed To State A Viable Claim For Unjust Enrichment.**

Mr. Whitaker repeatedly concedes the existence of an "express warranty" that governs his relationship with Defendants. (*E.g.*, Compl. ¶¶ 57-61, 71.) The existence of such an express contract precludes his unjust-enrichment claim as a matter of law. *Se. Shelter Crop. v. BTU, Inc.*, 154 N.C. App. 321, 330, 572 S.E.2d 200, 206 (2002) (affirming dismissal of unjust enrichment claim because it was a form of "quasi contract or contract implied in law" and could not stand in the face of an express contract); *Lawhead v. PNC Bank*, No. 1:13-cv-00198, 2014 U.S. Dist. LEXIS 40083, at *15 (W.D.N.C. Mar. 10, 2014) (unpublished, attached as Exhibit G) (holding that "express contract between the parties . . . precludes a finding of unjust enrichment" and existence of contract was "[f]atal" to plaintiff's unjust enrichment claim), *adopted by* 2014 U.S. Dist. LEXIS 40082, at *6 (Mar. 26, 2014) (unpublished, attached as Exhibit H) (dismissing unjust enrichment claim with prejudice); *Yancey*, 2013 U.S. Dist. LEXIS 140397, at *36-37 (holding that existence of express contract caused unjust enrichment claim to fail as a matter of law and recommending dismissal); *see also Metric Constructors, Inc. v. Bank of Tokyo-*

- 14 -

*Mitsubishi, Ltd.*, 72 F. App'x 916 (4th Cir. 2003) (under North Carolina law, "[a]n unjust enrichment claim is available only in the absence of an express contract between the parties").

Mr. Whitaker's unjust-enrichment claim also fails because he pleads no facts establishing that Defendants were *unjustly* enriched. "The doctrine of unjust enrichment was devised by equity to exact the return of or payment for, benefit received under circumstances where it would be unfair for the recipient to retain them without the contributor being repaid or compensated." *Lawhead*, 2014 U.S. Dist. LEXIS 40083, at *14-15 (internal quotation marks omitted). Mr. Whitaker conclusorily alleges that Defendants retained a benefit "under circumstances that make it inequitable for Goodman to retain it without paying the value thereof." (Compl. ¶ 128.) But there was no inequity here. Based on his own allegations, Mr. Whitaker's Goodman unit performed without incident for nearly two years; when a problem allegedly arose with the evaporator coil in his unit, the part was replaced free of charge; and he does not allege that he experienced any further problems with his unit. (*Id.* ¶¶ 69-71.) That is how the warranty is supposed to work, not the basis for an unjust-enrichment claim.

## V. CONCLUSION

For the foregoing reasons, Mr. Whitaker fails to meet the basic pleading requirements necessary to state causes of action on his own behalf, much less on behalf of a putative class. The Court should dismiss the complaint in its entirety.

Dated: June 4, 2014                                    Respectfully submitted,


/s/ Christopher M. McLaughlin
Theodore M. Grossman (OH 0037591)
E-mail:  tgrossman@jonesday.com
Richard J. Bedell, Jr. (OH 0038891)
E-mail:  rjbedell@jonesday.com
Christopher M. McLaughlin (OH 0078186)
E-mail:  cmmclaughlin@jonesday.com
JONES DAY
North Point, 901 Lakeside Avenue
Cleveland, OH 44114-1190
Telephone:  (216) 586-3939
Facsimile:  (216) 579-0212

Christopher G. Browning, Jr. (NC 13436)
E-mail:  cbrowning@williamsmullen.com
Garrick Sevilla (NC 38494)
E-mail:  gsevilla@williamsmullen.com
WILLIAMS MULLEN
301 Fayetteville Street, Suite 1700
Raleigh, NC 27601
Telephone:  (919) 981-4000
Facsimile:  (919) 981-4300
Local Civil Rule 83.1 Counsel

*Counsel for Defendants*

# CERTIFICATE OF SERVICE

I hereby certify that on June 4, 2014, I electronically filed the foregoing Defendants' Memorandum in Support of Motion to Dismiss using the CM/ECF system. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system. In addition, I further certify that a copy of the foregoing was served via U.S. mail on the following counsel of record:

Daniel· K. Bryson
Scott C. Harris
WHITFIELD BRYSON & MASON LLP
900 W. Morgan Street
Raleigh, NC 27603

Gary E. Mason
WHITFIELD BRYSON & MASON LLP
1625 Massachusetts Ave, N.W., Suite 605
Washington, D.C. 20036

Jonathan K. Tycko
Lorenzo B. Cellini
Andrew J. Silver
TYCKO & ZAVAREEI LLP
2000 L Street, N. W., Suite 808
Washington, D.C. 20036

*Counsel for Plaintiff*

/s/ Christopher M. McLaughlin
Counsel for Defendants